# WILLIAM P. GRIFFIN v. J. E. FRANKLIN, Appellant.

### Division One, December 23, 1909.

1. **APPEAL: Abstract: Affidavit.** The expression found in the abstract that appellant "appealed in due and statutory form" implies an affidavit; and where the clerk's certificate, on *certiorari*, contains a record entry showing an affidavit was filed, the appeal will not be dismissed.

2. **SHERIFF'S TAX SALE: In Bulk.** A sheriff's deed in the tax sale showing a sale of the entire section of land to one purchaser does not carry notice to subsequent purchasers that the sale was actually made in bulk.

3. ——: ——: **Notice to Subsequent Purchaser.** A petition in equity to set aside the sheriff's deed in the tax sale should allege that a *bona fide* subsequent purchaser bought with notice that the sheriff sold the land *en masse* and not by the least legal subdivisions. It is not sufficient to show that the entire tract was sold in mass, but notice of that fact must be brought home to the subsequent purchaser.

4. **SHERIFF'S DEED: Amended After Official Term: Relation.** An amended deed, executed under the supervision of the court, by the former sheriff, after his term of office has expired, and during the trial, may be admitted in evidence, and relates back to his original exercise of the power of sale and takes effect by relation from that time, where the other party purchased from the judgment debtor with notice, even though the original deed omitted the township in the description of the lands and omitted to state the years for which taxes were due, and the amended deed was made to supply these defects.

5. ————: ————: **Notice.** And a valid and sufficient judgment spread of record and an ensuing sale put the subsequent purchaser from the judgment debtor by quitclaim deed upon notice.

6. ————: ————: ————: **Actual Notice.** And where the attorney for such purchaser acting as his agent in making the purchase, actually saw the record of the, deed, and the attorney of said purchaser's vendee, by quitclaim deed, allowed said attorney to pass upon the title and accepted the deed upon his assurance that the title was good, said attorney became the agent *pro hac vice* for the said vendee and the vendee's attorney, and neither the first vendee nor the second can claim that he purchased in ignorance of the fact that the land was sold under a valid judgment for taxes.

7. ————: **Execution.** A recital in the sheriff's deed that execution was issued on the tax judgment and levied on the date stated proves itself, and testimony that no execution was found among the paper files of the case is not sufficient to overcome that *prima facie* proof.

8. ————: **Quieting Title: No Mesne Conveyances to Defendant.** Where the whole controversy at the trial ranged about the question of the validity of the sheriff's deed, and both sides admitted a common source of title, the judgment for plaintiff will not be affirmed solely because the *mesne* conveyances from the purchaser at the tax sale to defendant were not offered in evidence—the sale being valid; nor will a judgment be directed for defendant. But the cause will be remanded for another trial, to permit defendant to show he has a title.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

REVERSED AND REMANDED.

*John A. Hope* for appellants.

(1) The unpaid taxes for the years 1890 and 1892 constituted a lien on the land, prior and paramount to all others, of which Bader was bound to take notice when he took the quitclaim deed from Erwin, and of which Griffin was bound to take notice when Bader quitclaimed to him. The law also charged them with notice of the judgment enforcing the lien rendered by the

Pemiscot Circuit Court in 1895, and they were "bound to go further and see whether that judgment had been satisfied, and this inquiry would have disclosed the execution sale." The judgment was in all respects regular and valid. It makes no difference, therefore, whether the sheriff's deed was recorded or not, or whether correctly recorded or not, when Bader and Griffin purchased; they were bound to take notice of the judgment and of the fact that Erwin's title had passed to Mears by the sheriff's sale under the judgment. Fleckenstein v. Baxter, 114 Mo. 493. (2) The sheriff made two deeds to Mears, one dated September 4, 1895, and the other dated August 4, 1904. (a) The only defect that can be pointed out in the first deed is its failure to specify the amount of taxes against the land for each of the years 1890 and 1892. It states the amount of taxes adjudged against the land, and says the taxes were for the years 1890 and 1892, without specifying the amount for each year. This is sufficient. Even if the judgment had not specified the amount of taxes for each year, it would not have been erroneous; all the law requires in the judgment is a statement of "the year or years for which the same are due;" it does not require a specification of the amount for each particular year. Sec. 9304, R. S. 1899. (b) But even if the law should be construed to require the judgment to state the amount for each year, failure to comply with the provision would not affect the title of the purchaser at the tax sale. Jones v. Driskell, 94 Mo. 199. (c) If it be conceded that the failure to state the amount of taxes for each year is a defect, it was cured by the second sheriff's deed, dated August 4, 1904, which contains all the necessary recitals and is perfect in form. This deed, although executed nearly nine years after the tax sale, related back to the date of the tax judgment, and thus cut out plaintiff. Fleckenstein v. Baxter, 114 Mo. 496; Ozark Land & Lumber Co. v. Franks, 156 Mo. 673.

*C. G. Shepard* for respondent.

(1) It is true that the unpaid taxes for the years 1890 and 1892 constituted a lien upon the land; but the question arises how long does this lien continue, and does the sale under a tax judgment impart notice to a subsequent purchaser for value at a date when the taxes would have been barred by the Statute of Limitations had there been no sale when the records of the county failed to show any conveyance of the land for taxes for the years named. In the case at bar the taxes for which appellant claims the land was sold, and by and through which they have title was for the years 1890 and 1892. Yet there was no deed made which was sufficient to give the purchaser any title whatever, or sufficient to impart any notice to a subsequent purchaser for value until McFarland made and executed his amended sheriff's deed, dated August 4, 1904, which was long subsequent to the time that Erwin had sold to Bader, and subsequent to the time that Bader had sold to Griffin, being nearly ten years from the date of the tax sale. If a tax judgment creates a lien within itself which will hold for all this period of time without the sale enforcing the lien being made a matter of record in the deed records of the county where the sale has taken place, then indeed all former holdings of this court on the question that a void deed imparts no notice are wrong. Guffey v. Oreilly, 88 Mo. 418; Hopkins v. Scott, 86 Mo. 140. (2) (a) There is certainly quite a difference between a lien upon property for a certain amount and title to the property. If the appellant in this case, according to his contentions, has a lien on the property by virtue of the tax judgment, this is not title, and until the lien is properly foreclosed and a proper sale made of the property, then the owner of the property can at any time prior to the sale pay off the debt and relieve the property of the lien. So at most, under the contentions of appellant, he should no

more than be subrogated to the rights of the State to en-
force the lien for taxes, if the lien is not barred by lim-
itations, and the defendant would certainly have the
right to pay the amount of the lien against his property
and retain the title thereto.   (b)   But it certainly
seems that the appellant cannot claim the property in
question as owner thereof and also claim it by virtue
of a lien, let it be the tax lien or any other lien known
to the law.   Neither does it seem that a tax lien should
continue after the date of a sale for taxes under a tax
judgment.   But when the sale is made enforcing the
lien the judgment has then spent its force, and the
buyer holds through the sale, if at all, and not through
a lien.   (3)   The records of Pemiscot county at the
time respondent purchased the land from Bader, did
not show that there had been an attempt even to sell
the interest of Nat M. Erwin in the land in question,
but showing an attempt to sell the interest of Nat M.
Ervin in section 18, township —, range 11.   Ervin was
not in the chain of title and Griffin, the respondent, was
not chargeable with notice of conveyance or attempted
conveyances not within his chain of title.   Tydings v.
Pitcher, 82 Mo. 379; Huff v. Morton, 83 Mo. 372; Duck-
man v. McCollum, 47 Mo. 372.   (4)   Where the land
attempted to be conveyed is not properly described in
the granting clause of the deed said deed imparts no
notice to a purchaser for value, though by taking the
whole instrument together, and reading it as a whole,
the land is properly described.   Cass County v. Old-
ham, 75 Mo. 50; Ozark Land & Lumber Co. v. Franks,
156 Mo. 673; Richie v. Griffith, 12 L. R. A. 384.   (5)
The plaintiff in this case alleged in his petition that no
execution had issued out of the office of the circuit clerk,
authorizing the sheriff to make the sale of the property
in question.   This fact was not denied by the defendant
in his pleadings, and the plaintiff on the trial of the
cause introduced the clerk of the circuit court and
showed by him that no such execution had been re-

turned in his office; and that no record of the issuing of such execution was shown. Courts of record speak by their records only, and had execution issued in the case of Collector v. Erwin, and the said execution been lost or destroyed the statute points out how such papers can be supplied, and the only way such supplied papers can be used in evidence. Secs. 4560, 4561, R. S. 1899; Sec. 9304, R. S. 1899; Julian v. Ward, 69 Mo. 153; Beecher v. Deuser, 169 Mo. 159; Carnes v. Alexander, 92 Mo. 660. (6) The recital in the sheriff's deed that execution issued is no evidence of that fact, and is a mere recital which shows that the sheriff had jurisdiction and acted within the scope of his authority if the recitals therein are true; but such recitals may be contradicted either by record or by parol testimony, and the court records must show the matters as recited in the deed. Durette v. Briggs, 47 Mo. 361. (7) The sheriff's deed to Meares is void for the reason that it does not attempt to convey the interest of Nat M. Erwin, the true owner of the land; but conveys the interest of Nat M. Ervin, and the names are not *idem sonans.* Chamberlain v. Blodgett, 96 Mo. 482; State v. Curran, 18 Mo. 320; Robson v. Thomas, 55 Mo. 581; Simonson v. Dolan, 114 Mo. 176; Greer v. Lumber & Mining Co., 134 Mo. 185. (8) The deed from the sheriff to Meares is void for the reason it is nothing more than a mere skeleton, and fails to show the amount of taxes due for each year for which the sale of the land was made. Guffey v. Oreilly, 88 Mo. 424; Hopkins v. Scott, 86 Mo. 140. (9) The sale made by the sheriff to Meares, if there were no other defect in the sale or deed, should be set aside on a direct proceeding in equity attacking the manner of sale, as this suit was, for the reason that the sheriff did not divide the land into its smallest legal subdivisions or any subdivisions whatever, and did not sell the land in subdivisions, or only so much thereof as was necessary to pay the taxes, interest and costs, as the law demands. Yeaman v. Lepp, 167 Mo. 61; State

ex rel. v. Elliot, 114 Mo. App. 562; Corrigan v. Schmidt, 126 Mo. 304; Gordon v. Heckman, 96 Mo. 350.

LAMM, P. J.—This cause comes up on an appeal from a judgment of the Pemiscot Circuit Court in favor of plaintiff, finding and adjudging that plaintiff owns in fee simple section 18, township 19, range 11, in that county, containing 640 acres, more or less, and that defendant has no title or interest therein. Further, that a certain sheriff's deed recorded in book A., p. 71, through which defendant claims title, is null and void and is set aside and for naught held.

Counsel do not seem to agree as to the character of the suit. Defendant's counsel contends it is an action under section 650, Revised Statutes 1899, to determine title—plaintiff's that it is not, "strictly speaking," an action under 650, but "goes further." We construe his position to be that it is in the nature of a bill in equity to set aside a sheriff's sale and deed and clear away a cloud on his client's title, as well as a petition under section 650.

The petition charges that plaintiff owns the land in fee simple; that it is wild timber land in no one's possession; that defendant claims some interest or estate in it of a nature unknown to plaintiff and which he cannot describe unless it be through a pretended sheriff's deed recorded in book A, p. 71, and he is informed that defendant claims through that deed; that plaintiff had no knowledge (presumably, at the time he acquired title) that defendant claimed through that deed or otherwise and had no way of knowing that he claimed any interest in the land. The pleader then explains the reason for his client's lack of knowledge to be that the records of Pemiscot county showed the chain of title to be in plaintiff's grantor, one J. W. Bader, and that the record of the deed through which defendant claims, to-wit, book A, p. 71, does not

convey the land in question or any particular tract of land and that said pretended deed is void for uncertainty and want of description and is not sufficient to impart notice. It is next alleged that the deed is void because the sheriff did not sell the land in its smallest legal subdivision of forty acres; that it shows this infirmity on its face and shows that the sheriff sold the whole section at the same time to the same bidder; that the land was subject to subdivision and that one forty acres would have sold for enough to pay the full amount of taxes and costs and would have sold for as much as the 640 acres brought; that the section was reasonably worth $800 at that time; that neither the plaintiff nor any of those under whom he claims was present or consented to the bulk sale and that such sale was illegal, contrary to the rights of the true owner and a fraud upon those rights. Next it is alleged that the deed did not convey the interests of Nat M. Erwin but purports to convey that of Nat M. *Ervin,* a stranger to the chain of title and who had no interest in the land; and that the deed is void because there was no execution issued authorizing the sale.

The prayer is in accord with section 650, with an addition to the effect that if said sheriff's deed is found to be a cloud upon plaintiff's title then the court is asked to set it aside and cancel it, and for such other orders and decrees as it may deem meet and proper.

The answer admits that defendant claims an interest in the land and denies each and every other allegation in the petition.

The case on the facts is this:

It was admitted at the trial that Nat M. Erwin was the common source of title.

To sustain the issues on his part, plaintiff introduced two properly acknowledged and recorded quitclaim deeds—one, under date of August 26, 1902, from said Erwin to John W. Bader; the other, from said

Bader to plaintiff under date of April 25, 1904—both deeds conveying the land in controversy. At this point plaintiff rested.

To sustain the issues on his part, defendant introduced conveyances and records as follows:

(1) An original sheriff's deed from McFarland, sheriff of Pemiscot county, dated September 4, 1895, duly acknowledged and put of record on February 19, 1896. The certificate of record on the back of this deed showed that it was recorded at book A, p. 71, and this is evidently the record referred to in plaintiff's petition.

This deed had the usual recitals of sheriff's deeds on tax sales except that it omits the years for which the taxes were assessed and the amounts due on the described tract for each year—that part of the deed being an unfilled blank as follows:

> "Tract No.
>     1.
> Abstract of Taxes and interest for       Total.
> Each Year on above described and
> Numbered Tracts.
> Year, 1890, $......; Year, 18.., $......"

Among other recitals in the deed are the following: That the judgment was obtained on February 14, 1895, against Nat M. Erwin for taxes and interest amounting to $16.45 on the land described; that by the judgment the State's lien was foreclosed and the real estate "or so much thereof as may be necessary to satisfy such judgment, interest and costs, be sold according to law;" that a special execution and order of sale issued on said judgment on the sixth day of August, 1895, directed to the sheriff of Pemiscot county, and was delivered to him on that day and that on the same day he levied upon and seized the land described; and that the land was knocked off to John W. Mears on a sale

during the session of the circuit court made on due advertisement (giving particulars), the said Mears being the highest bidder.

The deed bore, also, a later certificate of record, to-wit, September 17, 1903, at book 28, p. 114. Said deed was admitted "subject to objection," the objection being: "Because it does not purport to convey the land of Erwin, the record owner. It doesn't state the amount of taxes due for the years for which the land was sold for the amount of taxes due on each year. No such deed as this is shown by the records of this county in Book 'A,' page 71. That the land was not sold in the least subdivisions as directed by law, but was all sold in gross. There is no provision made in the laws of the State of Missouri for re-recording deeds except when the records of the county are lost or destroyed. Because the land had been conveyed to Bader by Erwin prior to the time this deed was recorded; and for that reason this deed is not within the chain of title of the plaintiff."

(2) Defendant next introduced an *amended* deed from Sheriff McFarland, dated on the day of trial, to-wit, August 4, 1904, and duly acknowledged in open court, conveying the land in dispute to Mears and being in all particulars like the original except that the omission in the original is supplied, *i. e.*, the years for which the taxes were delinquent and on which the judgment was obtained are set forth as 1890 and 1892. The amount of the tax for 1890 is recited as $7.20 and for 1892 at $6.80—total $14. The township is supplied as "township 19" and throughout the deed the sheriff describes himself as the "late sheriff."

To the introduction of this deed plaintiff's counsel objected because it was made ten years after the land was sold and after it had been conveyed by Erwin to Bader and by Bader to plaintiff. The deed was admitted "subject to objection."

(3) Defendant introduced the tax judgment. It

is in the usual and perfect form, narrating service by publication. Among other things it was adjudged and decreed that the interest of defendant in the described real estate "or so much thereof as may be necessary to satisfy this judgment" be sold.

    (4) Defendant put in evidence the first record of the original deed as found in "book A, p. 71." That record agrees with the deed itself except that defendant's name is recorded as "Ervin" instead of Erwin, and the township number in the land description is omitted in that part of the deed setting forth the land knocked off to Mears—the record reading: "John W. Mears being the highest bidder for the following described real estate, *viz*: all of sec. 18, twp..., range 11 East."

Defendant left his paper title to rest on the foregoing records and on whatever admissions were made by the course of the trial or by the pleadings, coupled with the admission that Nat M. Erwin was the common source of title.

There was oral evidence put in on both sides, to be summarized later. For the purpose of showing the value of the land, plaintiff, in rebuttal, introduced a deed from the purchaser at the tax sale, John W. Mears, to one Trawick, dated December 1, 1897, duly acknowledged and recorded, conveying five hundred acres of the land in controversy for a recited consideration of $2,000. To that deed defendant objected "because it don't determine the value of the land at the time it was sold by the sheriff to J. W. Mears." The court permitted the deed to go in and defendant excepted.

In connection with the introduction of the Trawick deed there was testimony tending to show, on behalf of plaintiff, that $2,000 was the consideration agreed on between Mears and Trawick. On cross-examination the witness said that consideration was the value placed by Trawick on a stock of goods traded to Mears for the

land; that the trade was a hasty one made at night; and that an attachment was run presently by Trawick's creditors on the stock of goods, and he left the country.

Recurring to the other oral testimony, defendant put Sheriff McFarland on the stand, who testified, in substance, that he made the tax sale "in gross, by the section;" and made no attempt to sell the land in its smallest legal subdivisions. This witness was not familiar with the land, had never seen it and knew nothing about it except that it was near Owl City on a bayou "out about Little River" and the lay of the country was low there. He gave it as his opinion that it would have brought no more at sheriff's vendue if subdivided than it did in bulk. He was allowed to give his reason for that opinion and stated generally that other tracts in that neighborhood were sold in small pieces and did not bring "anything;" that the land was considered "almost worthless" by people inclined to buy, it being a swamp covered with water the greater part of the year. He testified that the land market in Pemiscot was poor in September, 1895, and that buyers on the day of the sale didn't seem to think the land was worth the taxes. This witness had occasion to notice what land was selling for. He had been sheriff and collector, but he was "not prepared to state what it was worth." His impression was that the land was bid off by one Roberts, and that Mears gave Roberts $5 for his bargain, and the two requested the deed made to Mears, which was done.

The defendant put Mr. Farris on the stand. He was not shown to be familiar with land values in the neighborhood of Owl City, but said he knew the location of the land, had been on it a number of times and "through it in a boat, and had fished on it." Witness was present at the tax sale and gave it as his opinion that it brought as much at bulk sale as it would if sold in the smallest legal subdivision. He regarded it as almost without value and not worth paying taxes on

and thought that every person present at the sale re-
garded it that way. On cross-examination he admitted
that he knew there was valuable timber on the land.
His impression was that there was a forty or an eighty
of it that "stood high" and was a very pretty piece of
land—thought it was a forty. His judgment was, that
if bidders had known that high land was there, that
piece would have sold for enough to pay all the taxes,
but that the rest of it would not have sold for anything.
The neighborhood was unsettled, the land was swampy
and overflowed at that time and he regarded it as ab-
solutely worthless, but he admitted that he did not
know "how other people regarded it."

It seems that the sales from Erwin to Bader and
from Bader to Griffin were made through attorneys
representing each party. Mr. Corbett, as Bader's attor-
ney, bought the land from Erwin for his client. Mr.
Shepard, as plaintiff's attorney, bought the land for his
client from Bader through Corbett. Neither Erwin,
Griffin nor defendant testified in the case, but defendant
put Mr. Corbett, Mr. Shepard and Mr. Bader on the
stand and sifted them in regard to the conveyances on
which plaintiff relies for title.

By Mr. Corbett it is shown that before buying the
land from Erwin he examined record "A, p. 71," and
saw the original record of Mears' tax deed. He would
not admit that record showed a sale of the land, but
characterized it as showing there "had tried to be a
sale of it, attempted sale." He made no investigation
of the file papers or the judgment in the tax suit; did
not look to see if there was a judgment; and inquired
no further in any direction beyond what record "A,
p. 71" showed. Mr. Mears lived seven miles away.
Witness asked him nothing about the matter. He
"didn't care anything about him." The consideration
of Erwin's deed to Bader was $100 for section 18 and
several other tracts. It was not the true consideration,
the witness said, but Bader paid $50 "for the whole

job.'' When Mr. Corbett saw Mr. Shepard in relation to the Bader sale to Griffin, as it transpires he did, he did not tell him, Shepard, any facts about the title, or a tax suit, or tax judgment, or that the land had been sold for taxes. He gave his remembrance of his conversation to be that he told him he, Corbett, knew where to buy a section of land cheap. Mr. Shepard asked him where and about the price. Witness told him where and put the price at $100 and Mr. Shepard said he would take it, and asked about the title. Witness told him he thought it good. He showed him no abstract and Mr. Shepard did not ask whether witness had investigated the title.

By Mr. Shepard defendant showed, in substance, that he made no investigation of the record whatever, did not know that the land had been sold for taxes, or that there was a tax judgment, and did not investigate the title but took Corbett's ''word for it.'' He gave the conversation between him and Corbett about as the latter gave it.

The testimony of Bader was unimportant.

Mr. Green, the clerk of the Pemiscot Circuit Court, was sworn and examined on behalf of plaintiff with reference to the existence of an execution on the tax judgment. His testimony follows:

''Q. What is your official position? A. Clerk of the circuit court and ex-officio recorder. Q. Have you in your custody the records and file papers of Pemiscot County Circuit Court? A. Some of them. Q. State whether or not there is in your possession an execution under which this land has been sold? A. I could not state. I have not seen it. Q. Have you investigated your papers to find whether or not such execution has ever issued and a return been made on it? A. No, sir. Q. Please examine your records and see whether or not such execution has been returned into court? A. It may take an hour and a half to find that. Q. State if you now have examined the record to see whether or

not such execution had been returned to this court? A.
Yes, sir. Q. Do you find such execution? A. I do
not. Q. Did you find the file papers in the case of Col-
lector against Nat M. Erwin for enforcement of taxes?
A. I found the petition in the case. Q. State if in
that file paper you noticed for the execution or return?
A. I did. Q. Did you find it? A. I did not find it.

"Cross-Examination by Mr. Brewer: Q. Do you
know whether or not the clerk of the court attached to
the file papers in the case of the State of Missouri ex
rel. Haerbert against Nat. M. Erwin the execution is-
sued on the judgment rendered therein? A. I don't
know. Q. You don't know if it was attached or not?
A. I don't know if the clerk attached it."

Mr. McKay was examined with reference to the
value of the land. He said he could not say he was
acquainted with it, but had seen portions of it. He did
not know about the land when Mears bought it, but he
did not think there were any improvements put upon it
up to the time of the Trawick sale; that timber had
been sold off of it afterwards.

By Mr. Schult it was shown on behalf of defendant
that he was an abstracter; that he approximately knew
where the land was and he was allowed to testify that
it was regarded by the community as almost worthless
and that it, in his opinion, would not have sold for more
in its smallest legal subdivisions than in bulk.

I. Respondent files a motion to dismiss based on
the theory that we have no jurisdiction because there
was no affidavit for an appeal abstracted. A subdi-
vision of plaintiff's brief is directed to the same point.
The abstract shows that appellant "applied for and
was granted an appeal" to this court; that the order
therefor was then and there duly entered of record.
The abstract further shows that appellant "appealed
the case in due and statutory form," etc. The abstract
is somewhat scant, but it is helped by necessary infer-

ences. The presumption arises that the court proceeded by right and not by wrong and we think the expression "due and statutory form" implies an affidavit (see Ray County Savings Bank v. Hutton, 224 Mo. 42, *arguendo,* on a kindred contention). But in this case the record entry showing an affidavit was filed, was brought here on appellant's suggestion of a diminution of the record and is shown by the return of the clerk to our writ of *certiorari.* We think the foregoing sufficient to show our jurisdiction.

Accordingly, the motion to dismiss is overruled.

II.  Respondent insists that the sheriff's tax deed upon which appellant's title must rest shows on its face that the land was sold in bulk in contravention of the statute and therefore that the deed is voidable in a direct attack and carried notice on its face to all subsequent purchasers of its natal infirmities. That precise question has been thoroughly threshed out in the case of Shelton v. Franklin, 224 Mo. 342, and, on the authority of that case, we rule the point against respondent.

III.  In the case at bar the petition alleged that the land was sacrificed by selling *en masse,* but plaintiff introduced no proof to sustain the allegation. The defendant, however, assumed the laboring oar in showing that no injury resulted to the landowner by putting up the property at vendue in bulk and knocking it down to the highest bidder in that form. It was shown, too, by defendant's testimony, that the land was sold in bulk. The testimony leaves it dark whether there was an injury to the landowner. Two views may be taken of the probative force of the evidence on that point. In Shelton v. Franklin, *supra,* it was ruled that the sheriff had a discretion in that behalf, that an unwise exercise of such discretion rendered the deed voidable because of selling the land otherwise than in the

lowest legal subdivisions. But it was also ruled that notice must be brought home to a bona-fide subsequent purchaser of such irregularity. We think a petition in equity should allege such notice. In this case there was neither allegation nor proof of such notice to Franklin.

Therefore, the point is ruled against respondent.

IV. It is contended by respondent's counsel that the amended deed should not have been admitted in evidence. But the point is unsound. That deed was executed under the supervision of the court and related back to the original exercise of the power of sale and took effect by relation at that time. [Land and Lumber Co. v. Franks, 156 Mo. l. c. 689 *et seq.*] It is argued that the original deed omitted the township and omitted to state the years and respective amounts of taxes due and that plaintiff took title without notice of the sheriff's sale of the specific land involved. But plaintiff did not purchase without notice. The judgment spread of record and the ensuing sale put him on inquiry. Such inquiry, if pursued, would have resulted in knowledge of the sale. It was so ruled expressly in Fleckenstein v. Baxter, 114 Mo. 493. Not only so, but in this case the record of the sheriff's deed showing a sale was seen by the attorney acting as the agent of Bader who purchased by a quitclaim deed. When Griffin purchased by his quitclaim, his attorney allowed the other attorney to pass on the title. To that extent *pro hac vice* Bader's attorney became the agent of Griffin's attorney and of Griffin himself. We cannot very well hold, in view of such a record, that plaintiff purchased in ignorance of the fact that the land was sold under a valid judgment for taxes.

The point is therefore ruled against respondent.

V. It is insisted that there was no execution issued on the tax judgment. We have stated the evidence fully on that issue and it is not sufficient to over-

come the recital of both of the sheriff's deeds to the effect that the sheriff was armed with the authority of execution process duly issued on a given date on the tax judgment. Such recital proves itself. [R. S. 1899, sec. 3210.] And the testimony relied upon to overcome this prima-facie proof of the fact was vague and wholly unsatisfactory. If we should rule that the mere physical absence (as here) of an execution from the files of a case long years after the event, was conclusive evidence that no execution issued at all, we would open the lid of a Pandora's box of ills. A theft, loss or mislaying of an execution would work havoc with land titles. The strong presumption is that officers do their duty and in this case that presumption means that the sheriff was armed with process at the time, and holds fast until the contrary is shown.

The point is ruled against respondent.

VI. Finally, it is urged upon us that the *mesne* conveyances from Mears to defendant were not introduced in evidence in the case and that the judgment should be affirmed on that score if on no other. The case was loosely tried in more ways than one and this is one of them, but it should not coerce an affirmance under the pleadings, admissions and the theory upon which the case was tried below. The theory of the case, as shown by the record, was that defendant held title through *mesne* conveyances from Mears, and the petition was directed to cancelling and setting aside the sheriff's deed which was a necessary link in defendant's chain of title. To this end a common source of title was agreed on and the whole controversy ranged about the question of the validity of said sheriff's deed. In other words, if that deed was bad plaintiff had title from the common source and if good, defendant held title from the same source.

In view of the foregoing trial theory and the

pleadings, coupled with the admission of a common source of title, we rule the point against respondent.

But we are not willing to direct a judgment in favor of the defendant. It may be he has no paper title or equitable title. The cause should be reversed and remanded for another trial. It is so ordered. All concur.