WILLIAM SHELTON, Appellant, v. J. A. HORRELL and WILLIAM HUNTER.

In Banc, February 9, 1911.

1. **PLEADING:** Sufficiency: Aider.    In determining the sufficiency of a bill in equity, resort may be had to the pleadings in the case, but not to the evidence.

2. ———: ———: Bill to Remove Cloud from Title.    To be sufficient, a bill to remove a cloud from the title must allege what title or interest the plaintiff has in the property.    A bill which alleges that plaintiff had the legal title in 1897, but fails to allege that he owned the title or any interest in the property at the time the suit was brought in 1906, and is without any other averment as to the condition of the title at the institution of the suit, is insufficient.

3. ———: ———: ———: Tax Deed:    Notice of Sheriff's Unlawful Acts.    A bill to remove a tax deed as a cloud upon plaintiff's title is not sufficient if it fails to allege that the defendants, who by the bill appear to be grantees of the pur-

chaser at the sheriff's sale, had notice of the irregular or unlawful act of the sheriff. It will not be assumed in determining the sufficiency of the bill that defendants bought by quitclaim deed from purchasers, although the evidence shows that, for the evidence cannot be considered in aid of the bill.

4. ————:  **To Quiet Title:  No Present Interest.**  A petition to quiet title, alleging a certain tax deed was void and asking that it be cancelled, and stating that plaintiff was the owner of the land at the time the tax proceeding was begun, but failing to state he has any present interest therein, does not state a cause of action. Under the old statute (Sec. 650, R. S. 1899) the plaintiff must state his interest in the property, and such interest must be a present, not a past, interest. Plaintiff must prove an interest at the date he filed the suit, and what must be proven must be pleaded, where it goes to the essence of the case.

5. **Laches:  Irregular Tax Sale:  Seasonable Application.**  A suit to have a tax deed canceled on the ground that the sheriff sold in mass 160 acres of land which was susceptible of four subdivisions, will be barred by laches unless seasonable application is made to have the irregular proceeding redressed. Where the owner, knowing the land had been sold for taxes, waited for nearly ten years, and then, owing to the fact that the land had increased in value, brought suit against grantees from the purchaser at the tax sale, who two years and more after the sheriff's sale bought, by quitclaim deed, for $800, and have subsequently paid taxes, the plaintiff will be held to have abandoned the land, and to be barred by laches.

6. ————:  ————:  ————:  **Quitclaim Deed.**  Nor does the fact that defendants took under a quitclaim deed from the purchaser at the tax sale, affect plaintiff's laches. They stand in his shoes, but under the circumstances plaintiff is chargeable with laches for failure to bring a timely suit to set the sale aside, and where plaintiff is chargeable with laches his suit is barred, notwithstanding defendants purchased with knowledge of the irregularity by the sheriff in selling the land in mass instead of by subdivisions.

7. ————:  **Changed Conditions.**  Laches is founded upon a change in the condition of the property, or in the relations of the parties thereto, or both. Where defendants have been misled by plaintiff's inactivity, who abandoned the land to the State, and with knowledge of the sheriff's irregularity in the method of selling the land for taxes, remained inactive while defendants bought, and did not bring suit until the land increased in value, owing largely to the construction of a levee and drains, there has been such a change in the conditions and parties as bars a suit.

Shelton v. Horrell.

## Per VALLIANT, C. J., dissenting.

1. **PLEADING: No Cause of Action: First Raised on Appeal.**
When an objection to the sufficiency of a pleading is made for
the first time in an appellate court, it ought not to be sustained
unless it must be sustained. If the petition is fatally defective,
in that it states no cause of action, defendant may avail himself
of its infirmity at any stage of the litigation; but if it is only
clumsy, or not clear in its statements, yet on a liberal construc-
tion the appellate court can see with reasonable certainty a cause
of action stated, it is the duty of the court to do so.

2. ————: ————: **Title.** It is a rule of evidence that a con-
dition once shown to exist will be presumed to continue until
the contrary is shown. So that where the petition states plain-
tiff held title to the land on the date of the sheriff's sale under
which defendants claim, it sufficiently states that he held title
at the date his petition was filed, where the purpose of the suit
was to vacate the title which had been passed to defendant by
the sheriff's sale.

3. ————: **Aider: Notice: Quitclaim Deed.** Averments omitted
from or meagerly stated in the petition may be supplied by the
answer. If the petition fails to state that defendants were
the purchasers at the tax sale or purchasers from such pur-
chaser, or that they had notice of the illegal acts of the sheriff
in selling the land in quarter sections, and they answer that
they bought from the purchaser at the tax sale in reliance upon
the recorded deed, without any knowledge of the irregularity,
plaintiff, having joined issue by a general denial, has the right
to show that they bought under a quitclaim deed and therefore
purchased with notice.

4. ————: **Tax Sale: No Allegation of Injury.** Where the peti-
tion states that the 160 acres of land was worth $1200, that the
amount of the judgment for taxes was $9.87, that the land was
susceptible of being divided into separate tracts of forty acres,
either of which would have brought more than the amount of
taxes, with interest and costs, and that the whole 160 acres were
sold for $115, no part of which was paid to plaintiff, there was
no necessity of adding he was injured by the sale.

5. ————: ————: **Sale by Subdivisions: Directory Statute.**
In holding that a statute is directory, the courts do not mean
that the officer to whom it is directed can disobey it at will.
The statute which requires the sheriff in levying execution to
divide the land if susceptible of division, although directory, is
not to be disregarded by him whenever he chooses to disregard
it. It only means that a sale *in solido*, in a collateral pro-
ceeding, will not be held to be void, but in a direct proceeding
it is voidable; and the landowner need do no more than show
the land was not subdivided, and then the burden is on defend-

ant to show that the circumstances justified a sale in bulk. Nor is it necessary for the petition to allege that the sheriff abused the discretion that the law confided to him.

6. **TAX SALE: Sale in Mass: Abuse of Discretion.** Even if the statute invests the sheriff with a discretion to sell land in mass, the sale of 160 acres in mass to pay taxes amounting to $9.87 is an abuse of power, and should be set aside.

7. ————: ————: **Abandonment.** The motive which actuates the owner of land in failing to pay taxes on it, does not in any way affect the legality of the sale, or the illegality of the sheriff's act in selling it in bulk. Whether or not the owner had abandoned the land does not affect the sheriff's discretion or the validity of the sale.

8. ————: **Laches: Equitable Defense.** Laches is an equitable defense. It is allowed only under equitable principles. In a sense, it is in derogation of the rights of the party under the Statute of Limitations, and therefore only allowed when right and justice call for it. Sometimes cases arise in which it would be inequitable to allow a claim because of the lapse of time, though short of the period prescribed by the statute, and in such cases equity closes its doors to the claimant.

9. ————: ————: **Prejudicial Delay: Changed Conditions.** But laches is not mere delay; it is prejudicial delay. The party pleading it must show not only the delay, but that owing to changed conditions which have taken place during the delay he has been injured.

10. ————: ————: **No. Improvement: No Abandonment.** Where no witness has died, no evidence has been lost, and defendants purchased in less than three years after the sheriff's sale from the purchaser at such sale, and took a quitclaim deed from him, and since their purchase have spent no money in improvements, and by their answer show they were not influenced in making the purchase by any conduct on the part of the plaintiff, but expressly say they relied upon the record of the sheriff's deed which was regular on its face, and all they have done is to pay the taxes, which plaintiff offers to return, together with the amount paid by their grantor at the sheriff's sale, plaintiff's suit to have the sale set aside because of admitted irregularity in selling the land in 160 acres tracts is not barred by laches, though delayed for nearly ten years after the sale. There is nothing to indicate that, because of the long delay, plaintiff has abandoned any claim he had to the land, or that defendants, believing he had, had invested their money in it.

11. ————: ————: **Quitclaim Deed: Notice.** Defendants, who purchased from the purchaser at the tax sale, and acting under the advice of learned counsel took a quitclaim deed, cannot

be heard to say they acted unadvisedly, but must be held to have known the effect of such a deed, and to have known what their grantor knew, namely, that the sheriff in making the sale acted in violation of the law.

12. ———: ———: **Increase in Value.** Increase in the value of the land, in no sense due to improvements put thereon by defendants or labor done by them, but to the building of a railroad near by and a system of drainage at public expense, does not amount to laches.

Appeal from St. Genevieve Circuit Court.—*Hon. Chas. A. Killian,* Judge.

AFFIRMED.

*Sam J. Corbett, Duncan & Bragg* and *Shepard & Shepard* for appellant.

(1)   This case has many points in common with the case of Shelton v. Franklin, decided by this Court in Banc and reported in 224 Mo. 342, but it has its distinguishing features which make the law announced in the above mentioned case only apply in this case to the extent to which the two cases are alike.   The main features distinguishing the case at bar from the Shelton-Franklin case are as follows: (a) In the Shelton-Franklin case there was no evidence introduced showing that the sale of the land in question was made *in solido,* the plaintiff relying on the recitals in the tax deed to show that fact, while in the case at bar the sheriff testified that the land in question was not offered in any subdivision, but was sold to one and the same bidder in bulk at one and the same time, and sold for more than four times the amount of the tax judgment and cost, while in the Shelton-Franklin case under the findings of this court (which was error and unsupported by the record) the land did not sell for enough to pay the tax judgment and cost.   (b)   In the Shelton-Franklin case the subsequent purchaser from the purchaser at the tax sale held under warranty deed, therefore was an innocent purchaser for value in the eye

of the law until the contrary was shown, while in the case at bar the defendants hold under quitclaim deed from the purchaser at the tax sale, and are therefore not innocent purchasers, but stand in the same shoes as their grantor, and cannot claim to be innocent purchasers for value without notice, as the fact that they hold through quitclaim deed is sufficient to give them notice, and should have led them to inquire into the manner of the tax sales; that being the title through which they claimed their rights to the land in question.   (2) The sheriff, in selling the lands in question, should have divided them and sold only so much thereof as was necessary to pay the execution and costs, and while a failure on the part of the sheriff to so divide the land does not, under the holdings of this court, make the sale void, yet such sale will be set aside on timely motion to that effect, or on a direct proceeding in equity for that purpose, where the defendant in the tax proceeding has been damaged, unless it be shown that the defendant in said proceeding later ratified the sale.   Yeaman v. Lepp, 167 Mo. 61; Reed v. Elliot, 90 S. W. 122; Corrigan v. Schmidt, 126 Mo. 304; Gordon v. Hickman, 96 Mo. 350; Roser v. Georgia L. & T. Co., 118 Ga. 181; Starr v. Shepard, 108 N. W. 709; Stark v. Cummings, 56 S. E. 130; Williamson v. White, 28 S. E. 846; Jungk v. Snyder, 78 Pac. 168; French v Edwards, 13 Wall. 506.   (3)  Defendants holding under quitclaim deed from the purchaser at the tax sale, stand in the shoes of said purchaser so far as this case is concerned, and cannot claim as innocent purchasers without notice, and any facts that could be urged against the original purchaser as a reason for setting the sheriff's tax deed aside can be urged with like force and effect against the defendants in this case.   Mann v. Best, 62 Mo. 491; Hendricks v. Calloway, 211 Mo. 536; Southern Bank v. Nichols, 202 Mo. 309; Zweigart v. Reed, 221 Mo. 33.

*Oliver & Oliver* for respondents.

(1) Appellant has failed to state a cause of action in equity, or aver any reason for equitable relief. An examination of the petition will disclose that appellant has failed to state the following jurisdictional facts: (a) He does not allege that he is the equitable owner of the land sued for. He does not allege that he is in possession of the property sued for. He is content with averring that he was the legal owner on September 11, 1897—about eight or nine years before the bringing of this suit. Turner v. Hunter, 123 S. W. 1099; Mason v. Black, 87 Mo. 329; Keane v. Keane, 66 Mo. 218; Clark v. Ins. Co., 52 Mo. 276. (b) If this land was sold, as plaintiff has alleged in his petition, "For the enforcement of a pretended tax lien," and not for the enforcement of a valid and subsisting judgment, that defect must appear upon the record. In such cases the remedy is one at law, not in equity. Turner v. Hunter, 123 S. W. 1099; Clark v. Ins. Co., 52 Mo. 276; Humphreys v. Milling Co., 98 Mo. 252. (c) The petition does not aver directly when the defendants acquired the title to this property, but it does aver that the defendants are subsequent grantees. It thereby negatively charges that the defendants were not the purchasers at the tax sale. It nowhere charges that the defendants knew of the unlawful and wrong conduct imputed to the sheriff in the making of said sale. It nowhere charges that the defendants, or either of them, had any knowledge of the matters complained of against the sheriff. There is, therefore, no equity stated in the petition. Shelton v. Franklin, 224 Mo. 342; Griffin v. Franklin, 224 Mo. 667. (d) These fatal defects in the appellant's petition can be raised, for the first time in this court. Turner v. Hunter, 123 S. W. R. 1100; McQuitty v. Wilhite, 218 Mo. 591; Hoffman v. McCracken, 168 Mo. 343. From the principles above stated, and the authorities cited in support of

them, the judgment of the trial court ought to be affirmed for the reason that plaintiff has not stated a cause of action in his petition.   (2)   Appellant's petition prays for the cancellation of the sheriff's deed to W. L. Stacy (who is not made a party defendant in this suit), and assigns five reasons therefor.   Every reason assigned by him has been directly passed upon by this court in the cases of Shelton v. Franklin, supra; Griffin v. Franklin, supra; and Turner v. Hunter, supra.   This record shows that this plaintiff was not injured by the sheriff's sale, but, on the contrary, that his land brought twice as much when sold by the sheriff as when sold by himself.   A more glaring case of laches and bad faith has seldom, if ever, come before this court.   This doctrine was announced by Judge Caldwell in the United States Circuit Court of Appeals, in the case of Lemoine v. Dunklin Co., 2 C. C. A. 343. Naddo v. Bardon, 2 C. C. A. 335; Turner v. Burke, 99 S. W. 76.   (3)   The plaintiff admits that he abandoned this property, that he had refused to care for it and to pay the annual taxes assessed against it; that he had declined to discharge his duties to this State, and to this property, because he had other uses for his money, and because the taxes were annually increasing upon it.   He refused to make known his claim to this property, or that he had any objections to the manner in which it was sold, until after these defendants had purchased the property (and they, by cooperating with others, were instrumental in advancing the value of this land).   After its value had been increased he brings this suit on "a mere technical right which he abandoned for years."   Such laches ought to bar and estop him from further prosecuting this suit, independently of the reasons set forth in the preceding points.

## IN DIVISION ONE.

GRAVES, J.—The sufficiency of the petition and the character of this action are in dispute. Plaintiff in the brief styles it "a suit in equity . . . for the purpose of removing a cloud from the title to one hundred and sixty acres of land." The substantive charges of the petition are: (1) That on and prior to September 11, 1897, plaintiff owned in fee the land in dispute, which is 160 acres of land in Pemiscot county; (2) that on September 11, 1897, the then sheriff of Pemiscot county sold said land at execution sale under tax judgment, and delivered to the purchaser thereof a tax deed which was recorded in that county and that such deed is a cloud upon plaintiff's title; (3) that said tax deed should be cancelled, set aside and for naught held, because: (a) the sheriff failed to divide the land into subdivisions, but sold it *in solido* in violation of law, whilst said land was susceptible of four subdivisions, either of which would have brought more than the whole taxes, interest and costs; (b) said land was at the date of sale worth $1200, and had the sheriff complied with the law and sold only one subdivision plaintiff would have had left 120 acres of the value of $900; (c) plaintiff had no knowledge of such sale or pretended sale until a few months prior to — day of February, 1905, at which time suit was brought for its recovery, but which suit was dismissed in November, 1905; (d) plaintiff never directed that said land be sold *in solido,* but had he known of the sale he would have directed it to be sold in the smallest legal subdivisions; (e) plaintiff has never received any of the surplus funds from the sale, nor authorized anyone to receive them for him; (f) said tax deed fails to state the taxes due for the different years for which it was sold; (g) the land in question, with accrued taxes of only $9.87, was sold to pay a judgment for $39.66, which was

rendered for taxes on this and other lands, which lands taken together did not constitute one tract, but lie in three separate tracts; (h) that no levy was ever made prior to the sale, and (i) no special execution was ever issued by the circuit clerk authorizing the sale by the sheriff.

The foregoing is a complete and full analysis of the petition. Following that part of the petition thus above analyzed, is a paragraph offering to pay the amount of the bid at the sheriff's sale and all taxes with interest, subsequently paid, and a further paragraph averring the non-residence of defendant, Mrs. A. Horrell. Then follows the prayer in this language:

"Wherefore, plaintiff prays that said deed be cancelled, set aside and for naught held, and that the court try, ascertain and determine the estate, title and interest of the plaintiff and the defendants herein respectively in and to the real estate aforesaid and for such other and further relief as to the court may seem meet, just and proper in the premises."

Defendants' answer makes certain admissions and states their defense. The admissions are (1) that plaintiff owned the land on September 8, 1897, and that on said day it was sold for taxes, but aver that the sale was by order of court and under a special execution duly issued commanding the sheriff to sell the same or so much thereof as was necessary to discharge the State's lien for taxes; and (2) that the land was sold under a judgment of the Pemiscot Circuit Court, but aver that the judgment was valid and regular and was for past due taxes owing to the State.

Following these are numerous allegations going to make up the charge and defense of laches, and then follows a plea of former adjudication. After these, the defendants admit the sale and aver that they own the land in fee simple. All other allegations of plaintiff's petition not specifically mentioned are denied.

Such is, in substance, the answer. Judgment was for defendants and plaintiff has appealed.

The constitutive allegations in the defense of laches and former adjudication we have left to be taken with the evidence bearing thereon. These and the evidence can best be discussed in the opinion under the points made. This sufficiently states the case.

I. The insufficiency of this petition as a bill in equity to remove cloud upon title is attacked in this court. It might be added here that not only does plaintiff call his pleading a bill in equity in the brief filed in this court, but in entitling his cause in the court below he so denominated his action.

Considering the instrument to be such as plaintiff denominates it to be, how stands it as to sufficiency? In determining the sufficiency of a bill, resort may be had to the pleadings in the case, but not to the evidence. We say the pleadings in the case, because after judgment and on attack in this court, the doctrine of aider by answer may be invoked.

The petition was filed in the court *nisi* on April 12, 1906. There is not an allegation in the instrument which avers that plaintiff had either the equitable or the legal title to this land at the date this suit was brought. The only averment is that he had the legal title September 11, 1897. If it can be said that the succeeding allegations show that on that date his legal title was changed to an equitable one or to a clouded title by reason of the sale and accompanying circumstances yet there is no allegation that plaintiff retained this equitable or clouded title from September 11, 1897, to the date of filing his suit. We are left to infer that he had not parted therewith in all these years.

If this bill states a cause of action at all it states a cause of action to remove a cloud from the title. In 17 Ency. of Plead. and Prac., p. 278, such bill is thus defined: "A bill to remove a cloud is a bill to procure

the cancellation, delivery up, or release of an instrument, incumbrance, or claim constituting a cloud on the plaintiff's title, and which may be used to injure or vex the plaintiff in the enjoyment of his title."

Of such a bill equity has inherent jurisdiction, independent of statutes. The same authority at page 279, thus speaks: "Equity has inherent original jurisdiction of bills and complaints to quiet title and to remove clouds. Indeed this is an independent head or source of equitable jurisdiction, not requiring any accompaniment of fraud, accident, mistake, trust, account, or other basis. Such bills are merely an illustration of the ancient *quia timet* jurisdiction · exercised by courts of chancery. The jurisdiction is exercised with great caution."

One of the prerequisites of such bill is that it must allege what title or interest the plaintiff has in the property. If such allegation is absent, the bill is demurrable. [17 Ency. Pl. and Prac., p. 327.]

This bill fails to allege that the plaintiff had any interest in the property at the time he brought his suit. It can be taken as true that he had the legal title in 1897, yet without some further averment as to the condition of the title at the institution of the suit the bill is bad. Plaintiff should aver that he had some interest at the time he invokes equity.

The petition is bad for another and further reason. It fails to aver that the defendants had notice of the irregular or unlawful act of the sheriff. From the bill it may be deduced that the defendants are subsequent grantees of the tax sale purchaser. On this question the bill says: "Plaintiff here and now offers to pay to the defendants, William Hunter and J. A. Horrell, the amount paid by them or their grantor for said lands at said sheriff's sale, together with what taxes they have since paid on said lands, with interest thereon since the date of said pretended sale."

The use of the phrase "or their grantor" indicates that the pleader meant that they were subsequent grantees. Such is the fact in evidence, but the evidence should not be considered in weighing the sufficiency of the bill. It appears by the evidence that defendants bought from one Stacey, the purchaser at the tax sale, and took from him a quitclaim deed. The bill should have averred that they took with notice of the act of the sheriff, or it should have alleged that they took by quitclaim deed. The failure to make such an allegation is fatal to the bill. The bill must be measured by its own allegations and not by the facts in evidence. [Shelton v. Franklin, 224 Mo. 342; Griffin v. Franklin, 224 Mo. 667.]

To our mind this bill fails to state a cause of action against the defendants.

In the Shelton case, supra, which case received as much consideration from this court as any case of recent years, we said:

"From the cases we take the rule to be: (1) That the statute is directory; (2) that by it some discretion is allowed the officer; (3) that an abuse of this discretion may be and should be reviewed by the court either upon motion or direct attack by a bill in equity; (4) that this attack should be made in seasonable time; (5) that the abuse of the sheriff's discretion by a sale *in solido* is only an irregularity which may render the sale and deed voidable and not void. To these conclusions may be added that the attack by bill in equity is good as against a subsequent purchaser with knowledge or notice of the unwarranted violation of the sheriff's discretion and knowledge or notice of the injury done the execution debtor thereby. So that, under these authorities, the deed in question is not void upon its face for the reason now under discussion, but is only voidable. To make a case the plaintiff would have to show: (1) A sale *in solido;* (2) that such

was abuse of the discretion lodged with the sheriff; (3) consequent damage and injury to the judgment debtor; (4) a seasonable application for redress; and (5), if against a subsequent grantee, knowledge and notice upon his part of the things mentioned in the preceding paragraph, and reiterated in the first three numbered subjects in this paragraph.''

What must be shown must likewise be properly brought to an issue by proper pleadings.

II. Nor does it state a good cause of action under our old section 650. Under that statute the plaintiff must state his interest in the property. Such interest must be a present rather than a past interest. This pleading does not undertake to state a present interest in the lands involved. To say that this instrument stated a cause of action, either under the statute or in equity, would be to wipe out the rules of pleading.

If I bring a suit in replevin and say that three years ago I was entitled to the possession of certain chattels, it is not equivalent to saying that I am now so entitled. So, too, if I aver that ten years ago I owned certain real estate, that is not equivalent to saying that I now have some interest therein. Plaintiff must prove an interest at the date he filed the suit and what must be proven must be pleaded, where it goes to the essence of the case.

III. But even if it be granted that the scantily worded petition states a cause of action, yet the plaintiff has been guilty of such laches as should debar his recovery in this case. According to the sheriff's deed this land was sold September 8, 1897, to W. L. Stacey. These defendants bought of Stacey March 18, 1900, or two years and a half thereafter. They paid $800 and took a quitclaim deed. The plaintiff's deposition was read in evidence. On examination in chief he said:

"My name is William Shelton, age eighty-two years, and reside now at Sanford, Kentucky. I bought six hundred and forty acres of land in Pemiscot county, Missouri, from J. B. English of Bowling Green, Missouri; I don't remember exactly the year I bought the land. After the purchase I paid taxes on the land for many years, for which I received tax receipts. Owing to the fact that the tax continued increasing from year to year, and to the fact that I had so many other uses for the money I had, I stopped paying the taxes, and the lands were sold for the taxes. Owing to the fact that the value of the lands increased, and to the fact that more of the land was sold to pay the tax than was necessary, I authorized Messrs. Duncan & Bragg to bring suit for the recovery of the land. All the land was not sold for the taxes. Some of the tax receipts are now in the possession of my attorneys, Messrs. Duncan & Bragg, of Caruthersville, Missouri. All of the land was not sold for taxes."

As a part of his cross-examination he further said:

"Q. When did you hear from Messrs. Duncan & Bragg in regard to this land? A. About five or six years ago, I think.

"Q. When did you first hear when the lands were sold for taxes? A. I think about ten years ago.

"Q. You never authorized the bringing of a new suit? A. (Plaintiff declined to answer) I paid very little attention to the Pemiscot county lands and I do not remember.

"Q. You did not consider your Pemiscot county lands as assets of your estate? A. That was about the way of it."

The judgment in this case was entered April 30, 1907, and whilst the record does not show the time this deposition was taken, it must have been before the trial. If, as plaintiff says, he knew this land was sold

for taxes ten years before the taking of his deposition, he knew that fact two years or more before the defendants bought. Defendants swear they had no actual knowledge of the alleged misconduct of the sheriff.

In Shelton v. Franklin, supra, we said: "To make a case the plaintiff would have to show: (1) A sale *in solido;* (2) that such was abuse of the discretion lodged with the sheriff; (3) consequent damage and injury to the judgment debtor; (4) *a seasonable application for redress;* and (5), if against a subsequent grantee, knowledge and notice upon his part of the things mentioned in the preceding paragraph, and reiterated in the first three numbered subjects in this paragraph."

. Under this evidence is this application seasonable? Does it not show that the defendant had in effect abandoned his property and didn't even reckon it as an asset of his estate? He waits practically ten years after he acquired knowledge of the fact that his property had been sold for taxes, and then "owing to the fact that the value of the lands increased" he concludes to disturb the title of the defendants, who without actual knowledge had paid eight hundred dollars for the property. Defendants took under a quitclaim deed, it is true, and stand in no better shoes than their grantor, the purchaser at the tax sale, but that is only a circumstance to be considered in applying the beneficent doctrine of laches, if indeed it could be said to be even a circumstance. Plaintiff with this knowledge stands by and permits them to pay their money and afterwards to pay taxes on the land without taking a seasonable step to assert his rights.

Speaking to the question of laches, through LAMM, P. J., in the very recent case of Rutter v. Carothers, 223 Mo. l. c. 640, this court said: "Laches gives rise to an equitable doctrine, free from artificial or fixed

rules, having regard to the relations of the parties to each other and to the subject-matter to be applied to each case in accordance with its own particular circumstances in order to reach substantial justice—for instance, where plaintiff lies by an unreasonable length of time awaiting a rise in land or some future event to determine his course, or where by acquiescence or by sleeping upon his rights he creates the belief in others that those rights are abandoned, whereby he influences them to act on such belief, or where something has intervened whereby the party asking relief would obtain an unconscionable advantage if the relief were given. Under these or like conditions, where there is some natural justice behind the claim, the defense of laches is allowed independently of the Statute of Limitations. [Cockrill v. Hutchinson, 135 Mo. l. c. 75 *et seq;* Stevenson v. Smith, 189 Mo. l. c. 446, *et seq;* Landrum v. Bank, 63 Mo. l. c. 56 *et seq;* Bucher v. Hohl, 199 Mo. l. c. 330.]"

It was the doctrine herein announced that prompted the rule of "seasonable application" in the Shelton v. Franklin case, supra. A person should not be permitted to abandon his property as to the payment of taxes and the discharge of tax liens, and then after the State has enforced its lien wait for years to question the act of a sheriff, who has some discretion as to the manner of sale. In this case the plaintiff admits that owing to increased tax rates he had in effect abandoned his property to the State. He admits that he only concluded to question the sale after the land had advanced materially in value. He forgets that by timely efforts he could have prevented defendants from expending their money for the land, if his contention now is good. He stands to one side for nearly ten years, knowing that his land had been sold for taxes. During this time the defendants were permitted to expend their money for the land, and thereafter to pay the

taxes thereon. In the meantime by reason of the construction of a public levee, the price of the property greatly increased. This character of conduct should be condemned, and the doctrine of laches reaches it. Laches as we understand the rule is not measured by the yardstick of the Statute of Limitations, but rather by the conduct of the parties and the equities of the situation. The plaintiff in this case has introduced no evidence showing that he was injured by a sale *in solido*. On the other hand, the defendants offered evidence to the effect that there was no injury by reason of the sale having been made *in solido*.

Applying the doctrine of laches to cases of this kind the Federal courts have announced some salutary rules. In the case of Lemoine v. Dunklin County, 2 C. C. A. l. c. 347, CALDWELL, J., for the U. S. Circuit Court of Appeals said: "Laches is imputed independently of the Statute of Limitations. Courts of equity apply the doctrine on principles of their own, and time is only one of the circumstances to be considered in its application. It is settled, say the Supreme Court, 'that laches is not, like limitations, a mere matter of time, but principally a question of the iniquity of permitting the claim to be enforced—an iniquity founded upon some change in the condition or relations of the property or the parties." [Galliher v. Cadwell, 145 U. S. 368; Godden v. Kimmell, 99 U. S. 201; Mackall v. Casilear, 137 U. S. 556.]"

The distinction drawn is that there should be a changed condition of the property or the parties. That in this case there has been a changed condition of the property there can be no question. Plaintiff so testifies. That the parties were misled by the inaction of the plaintiff likewise appears from the record. Had plaintiff brought an action when he first learned that his land had been sold, the defendants might have been saved the worry of this suit. Under the law plain-

tiff had two remedies: (1) a motion in the original case to set aside the sale, and (2) a timely bill in equity to set aside the same. Upon these rights he slept for nearly ten years. Under evidence which shows that the land had materially advanced in value, and to some extent through the efforts of the defendants, it will hardly do to say that there has not been a changed situation, which was occasioned by the laches of the plaintiff. He says that he abandoned his property to the lien of the State for taxes. He says that he voluntarily quit paying taxes, because he thought he could put his money to a better use. He says that he knew that his property had been sold for taxes shortly after the sale. He says further that he authorized this suit because after the sale the property had advanced in value.

Mr. Justice BREWER, in the case of Naddo v. Bardon, 2 C. C. A. l. c. 337, has aptly and justly said: "No doctrine is so wholesome, when wisely administered, as that of laches. It prevents the resurrection of stale titles, and forbids the spying out from the records of ancient and abandoned rights. It requires of every owner that he take care of his property, and of every claimant that he make known his claims. It gives to the actual and longer possessor security, and induces and justifies him in all efforts to improve and make valuable the property he holds. It is a doctrine received with favor, because its proper application works out justice and equity, and often bars the holder of a mere technical right, which he has abandoned for years, from enforcing it when its enforcement will work large injury to many."

Touching the question, HILL, C. J., in the Supreme Court of Arkansas in the case of Turner v. Burke, 81 Ark. 352, has said: "He concluded that the lands were not worth their tribute to the State, but the appellees had more faith in their future and discharged the du-

ties of landowners to the State; and whose equity is the stronger? The statement of the case answers it. The appellants are seeking to reap where they have not sown, and to gather where they have not strewed, and this is not the first time such conduct has caused loss. [Matt. xxv, 15-30.]"

The learned judge then quotes from Judge BREWER as herein above quoted. Further on the same judge says: "So, if, the title being beyond challenge, during these years he pays no taxes thereon, makes no effort to improve or increase its value, and by the labor and efforts of others, under the protecting powers of the State, large value has been given to it, the State may properly say to him, as may also the individuals who have thus wrought this change in value: 'You abandoned the property when it was comparatively valueless. You have taken no share in the burdens of taxation or the support of the State. Others have toiled, paid taxes, and made the property valuable. Therefore, because of your shirking of duties and obligations, you shall not, whatever may have been the nature of your title in the first instance, be permitted to appropriate the value thus produced by others.' "

So in this case, the plaintiff's evidence shows that he abandoned this property when it was comparatively worthless. He left the State to take the property for the taxes. Having so done, he should not now be allowed to assert his claim of title. Especially is this true where he admits that he knew that his land had been sold some two years or more before the defendants acquired title. It was his duty after he acquired knowledge of the sale to make a timely application for relief. If he could not proceed by motion in the original case, there was open to him a timely application to a court of equity. This latter right he refused to exercise for years. To our mind, under the case law, the

doctrine of laches precludes the right of the plaintiff to recover.

IV.   There are but slight differences between this case and the Shelton-Franklin case, supra.   In the Franklin case, the subsequent grantees took by warranty deed.   In this they took by quitclaim deed.   Taking title in that way, the subsequent grantee takes the title subject to all the equities existing between the owner of the land and the purchaser at the tax sale. In other words the subsequent purchaser under a quitclaim deed stands in no better situation than the original purchaser.   The knowledge of the one is the presumptive knowledge of the other.   This because of the character of the conveyance.   But however this may be, it does not affect the doctrine of laches, if in fact the plaintiff has been guilty of laches.   In the Franklin case, supra, there was no quitclaim deed, nor was there evidence that the land was sold *in solido*.   In this case we have both.   In other words, the record shows that defendants deraign title through a quitclaim deed, and there is some evidence as to the manner of sale.   Yet this evidence is not very satisfactory or convincing.   Whilst it seemingly appears from this record that no injury was done to the plaintiff by reason of the action of the sheriff, yet all these questions were for the court *nisi*.   Upon what theory the court acted, we are unable to determine.   But be this as it may, with the views we have upon the petition and the question of laches, the matter becomes immaterial.   If the petition states no cause of action the judgment is not out of line.   If the plaintiff is precluded by his laches the judgment is still correct.   This therefore obviates a further discussion of the question as to what effect the quitclaim deed, and proof of a sale *in solido,* would have upon the case.   As stated above the proof is very scanty upon the question of a sale *in solido*.   What

view the trial court took of this question is rendered immaterial in view of what we have concluded upon other points.

Under the facts, excluding the question of the insufficiency of the petition, the judgment is for the right party. Upon the whole the judgment should be and is affirmed.

## IN BANC.

GRAVES, J.—The foregoing opinion written in Division One is adopted as the opinion of the Court in Banc. *Lamm, Woodson,* and *Ferriss, JJ.,* concur; *Valliant, C. J.,* and *Brown, J.,* dissent; *Kennish, J.,* does not sit in the case; *Valliant, C. J.,* has leave to file dissenting opinion hereafter.

## DISSENTING OPINION.

VALLIANT, C. J.—The points on which this case turned in the majority opinion of the court are of so much importance that I deem it my duty to signify the reasons for my dissent.

I. The petition is criticised and is condemned as failing to state facts sufficient to constitute a cause of action. It does not appear to have occurred to the defendants that there was any defect in the petition until they reached this court. There was no demurrer filed or other challenge of the sufficiency of the petition in the circuit court. Of course, if the petition is fatally defective, if it states no cause of action, its infirmity may be shown at any stage of the litigation, but if it is only clumsy, or not clear in its statements, yet on a liberal construction the court can see with reasonable certainty a cause of action stated, it is the duty of the court so to do. That is what section 1831, Revised

Statutes 1909, requires. When an objection to the sufficiency of a pleading is made for the first time in an appellate court it ought not to be sustained unless it must be sustained. There is also another rule of pleading that should not be overlooked in this case, that is, that if the answer gives aid to the petition the aid will be taken into account.

*a.* It is said that this petition does not state that the plaintiff held title to the land at the date of filing the petition. It states that he held title on the day of the sheriff's sale under which the defendants claim. It is a rule of evidence that a condition once shown to exist will be presumed to continue until the contrary is shown. Besides, the plaintiff could not say with truth that he held the title to this land on the day he filed this suit, because the title was then in the defendants, and the purpose of the suit was to vacate that title. The petition says it was the plaintiff's land September 11, 1897, that it was then sold for taxes and struck off to a person from whom the defendants purchased and under whom they claim and that for certain reasons that sale was illegal and the prayer is that the deed which is the source of defendant's title be cancelled. That would be a sufficient showing of the plaintiff's title even under the common law *contra proferentem* rule of construction.

*b.* It is also said that the petition fails to state that the defendants had notice of the illegal acts of the sheriff in making the sale. It does not clearly appear from the petition whether the defendants were the purchasers at the sheriff's sale or purchased from the purchaser at the sale, except in that part of the petition where the plaintiff offers to pay to defendants "the amount paid by them or their grantor" at the sheriff's sale, together with taxes, etc.; the words "or their grantor" might imply that the defendants were subsequent purchasers. But if there was a defect in the petition in this respect the answer came to its aid

and cured the defect; it set out just how the defendants acquired title, namely, by purchase from Stacey, the original purchaser. And they aver that "the sale was made by the sheriff in manner, mode and form as prescribed by law," and that they bought relying on the recorded deed to Stacey which did not show that the land was not sold in small subdivisions, that they paid in full value for the land "without any knowledge of any irregularity of the sheriff in making the sale of said land." Thus the defendants by their answer tendered the issue of innocent purchasers for value, and the plaintiff joined the issue in his reply of general denial. Therefore the plaintiff had the right at the trial of that issue to prove, as he did prove, that the defendants were not innocent purchasers for value, because they had bought under a quitclaim deed, stood in the shoes of Stacey and were charged with knowledge of what he knew, and he being present at the sale, knew just what was done, knew that the 160 acres were sold in one body without having first been offered in the smallest legal subdivisions.

*c.* It is also said that the petition is defective because it does not state that the plaintiff was injured by the sale of the land in a body. It states that the 160 acres were worth $1200 at the date of the sale, that the amount of the judgment for taxes was $9.87, that the land was susceptible of being divided into separate subdivisions of 40 acres each, either of which would have brought more than the amount of the taxes with interest and costs, that the whole 160 acres were sold in a body for $115, no part of which was ever paid to plaintiff. Was there any use in his adding that he was injured thereby?

*d.* It is also said that the petition ought to have said that the sheriff in selling the land in bulk abused the discretion that the law confided to him. The argument treats the statute in question, section 3185, Revised Statutes 1899, now section 2206, Revised Stat-

utes 1909, as if it imposed no obligation on the sheriff at all, saying to him in effect, You may or may not, as you please, divide the land in small lots and sell no more than is necessary to bring the amount called for in the execution, or you may sell the whole tract in bulk, if you so prefer; and that seems to have been the sheriff's opinion in this case, as we shall presently see. But I do not so understand the statute. nor the decisions referred to in the opinion. The statute is: "When an execution shall be levied upon real estate, the officer levying the same shall divide such property, if susceptible of division, and sell so much thereof as will be sufficient to satisfy such execution, unless the defendant in the execution shall desire the whole of any tract or lot of land to be sold together, in which case it shall be sold accordingly."

In Shelton v. Franklin, 224 Mo. 342, l. c. 361 and following, cases are referred to holding that that statute is directory. I do not understand when a court says a statute is directory that it means to say that the officer to whom it is addressed is at liberty to disregard it, nor do the cases cited in that opinion so hold; if that is what the court means when it says a statute is directory, it might as well repeal the statute or adjudge it to be of no force or effect. In Shelton v. Franklin there was no occasion to say what would be the effect if the sheriff should abuse the discretion allowed him in the performance of the duty imposed by that statute, because there was no evidence in that case that the sheriff did not obey the direction given in that statute. The contention there was that the sale was void because the sheriff's deed did not recite that the land was divided and so offered for sale as the statute required, but the court held that the absence of such recital in the deed did not render it void. The court said l. c. 364: "There is no oral proof as to the sale being *in solido* and there is a presumption that the officer did his duty in conducting the sale." Therefore

Shelton v. Franklin is no authority for saying that it devolves on the plaintiff in this case, not only to show that the sheriff disobeyed the law, but also that he abused the discretion given him by the statute; there are expressions in that opinion to that effect, but they were mere *obiter dicta*. Assuming that there is a discretion in the sheriff to be exercised when the circumstances justify a departure from the direction prescribed by the statute, it does not devolve on the injured party to prove that the officer not only violated the law but abused his discretion also; it is sufficient to show that he violated the law, and it then devolves on the party who would justify the unlawful act to show that the circumstances justified it. But the cases cited in Shelton v. Franklin do not in my opinion go to the extent of holding that the sheriff may at his pleasure disobey the statute. The first case cited, Rector v. Hartt, 8 Mo. l. c. 461, says: "We regard this statute as directory. A violation of its injunctions will not make a sale void, although it may be good cause for setting it aside on proper application. . . . All that is intended to be said is, that a sale in mass by a sheriff, of distinct parcels of real estate, is not *ipso facto* void." None of the cases following have gone farther than that. They all say that the failure of the sheriff to obey the law in this respect does not render the deed void so that it may be attacked in a collateral way, but that it is voidable in a direct proceeding to set it aside. [Morrison v. Turnbaugh, 192 Mo. l. c. 444.] None of the decisions cited say that the sheriff has a discretion to violate the law or that it devolves on the injured party, when he comes into a court of equity to complain of the violation of the law, to show also that the sheriff abused his discretion. But assuming that the sheriff had a discretion and that it devolved on the plaintiff to show by his pleadings and proof that the officer abused his discretion, the plaintiff's pleading and proof, in my opinion, amply show that. Here are

160 acres of land, which the petition says are easily susceptible of division, sold in mass under an execution calling for $9.87; what more could be said to show a gross abuse of the official power? The act speaks for itself; circumstances to justify it can scarcely be imagined. The sheriff as a witness in the case said: "I sold them that way (that is, in mass) because they were advertised in that shape. I had no particular reason for selling that way, any more than there was a certain piece of land that taxes was due on and we wanted the taxes, we wanted all that could be made off of the land." There we have a display of the discretion which the officer exercised. I cannot bring my mind to justify such a wanton abuse of power in direct violation of law whereby a citizen is deprived of 160 acres of land for $9.87 when, if the law had been obeyed, he would in all probability have lost only forty acres or even less.

II. The deposition of the plaintiff was taken and in it he made certain statements to the effect that he knew that the taxes had not been paid on this land, he had stopped paying them because the taxes increased from year to year, "and I had so many other uses for the money I had, I stopped paying the taxes, and the lands were sold for taxes." On cross-examination as to why he had delayed so long bringing suit, he said he paid very little attention to the Pemiscot county lands. "Q. You did not consider the Pemiscot county lands as assets of your estate? A. That was about the way of it." Much is made of that admission as showing a purpose to abandon the land, also as bearing on the question of laches, to which question I will return later.

First, the plaintiff's wilful abandonment of the land. Does the motive which actuates a man in failing to pay the taxes on his land affect the consequence of that act in anyway? Suppose two men each owning 160 acres of land lying side by side, one does not pay

his taxes because he does not care for the land, or has other use for his money, the other does not pay his taxes because he is poor and has not the means, both are sued for the taxes, both make default and a judgment is rendered against each, an execution issues on each judgment, the sheriff sells each 160-acre tract in mass and each brings a suit in equity to set aside the sale for the failure of the sheriff to obey the statute, would there be any difference between them as to the right to have the sale set aside? Could the court say to the poor man, We will set aside the sale in your case because your failure to pay taxes was owing to your poverty; but to the other say, We will not set aside the sale in your case, because you were amply able to pay your taxes but thought you had better use for your money? Or suppose it should appear that the sheriff at the sale had said: ''Whereas the statute says I shall divide this 160 acres into the smallest parcels into which it is susceptible of division, and so offer it for sale, but it has been held that the statute is only directory and that I have a discretion in the matter, therefore because this 160-acre tract is owned by a rich man who could well have paid his taxes if he would, but who has manifested an indifference to the land, I will not divide it, but offer the whole tract for sale to satisfy the $9.87 judgment.'' Would any court listen to that statement as a lawful exercise of official discretion? Yet when reduced to plain English that is all the significance that can be attached to the evidence tending to show the motive that actuated the plaintiff in failing to pay the taxes on this land.

Assuming, for the argument, that the sheriff has discretion to violate the law under circumstances that would justify it, there are no such circumstances in this case.

III. The testimony shows that this land, the whole 160-acre tract, was sold in mass, and that fact makes the wide distinction between this case and Shelton v. Franklin on which the majority opinion herein rests. It is said in the opinion that the testimony on this point is not very clear, but I think it is as clear as can be. The sheriff who made the sale testified: "If I sold that piece of land I sold it in one body. During the time I was sheriff making sales for taxes, the land was sold in lots as advertised. . . . If a lot was advertised as 160 acres it was sold all at once, it was not divided." The uncertainty in the testimony referred to in the opinion is in the words, "If I sold that piece of land." The only question left open by that testimony is did that sheriff sell that land? The sheriff's deed in evidence under which the defendants claim answers that question, and with that question answered there is no uncertainty as to the fact that the land was sold in mass.

IV. I will now pass to what seems to me to be the main point on which the majority opinion rests, that is, that the plaintiff should be turned out of court because he has slept too long; he has been guilty of laches. It is not claimed that the plaintiff is barred by the Statute of Limitations. The sale was made September 11, 1897, the suit was brought April 12, 1906, leaving the plaintiff a margin of five months in which to bring his suit.

Laches is an equitable defense, it is allowed under equitable principles, but only under equitable principles. In a sense it is in derogation of the rights of the party under the Statute of Limitations, and therefore only allowed when right and justice call for it. Equity, even under the ancient practice, when it was not bound by the Statute of Limitations, conformed to a large extent to the terms of the statute, under the maxim, equity follows the law, and it did not refuse to

follow it unless there were circumstances that appealed
to a court of conscience to interpose its beneficent
power.   Sometimes cases arose when it would be in-
equitable to allow a claim because of the lapse of time,
though short of the period prescribed by the statute,
and in such cases equity closed its doors to the claim-
ant.   That was the origin of the doctrine of laches.
Laches is not mere delay, it is prejudicial delay, the
party pleading the defense must show not only the de-
lay, but that owing to changed conditions which have
taken place during the delay he has been injured.

Pomeroy, 5 Eq. Jur. (1 Eq. Rem.), sec. 21, says:
"The true doctrine concerning laches has never been
more concisely and accurately stated than in the fol-
lowing language of an able living judge: 'Laches, in
legal significance, is not mere delay, but delay that
works a disadvantage to another.   So long as parties
are in the same condition, it matters little whether one
presses a right promptly or slowly, within limits al-
lowed by law; but when, knowing his rights, he takes
no step to enforce them until the condition of the other
party has, in good faith, become so changed that he can-
not be restored to his former state, if the right be then
enforced, delay becomes inequitable, and operates as
estoppel against the assertion of the right.   The disad-
vantage may come from loss of evidence, change of ti-
tle, intervention of equities, and other causes; but when
a court sees negligence on one side and injury there-
from on the other it is a ground for denial of relief.' "

That is the doctrine of this court as well as I have
been able to learn it from the decisions.   In all the
decisions of this court to which the majority opinion
refers where the defense of laches has been allowed
to prevail, there have appeared not only delay and in-
creased value of the property, but other circumstances
which put the defendant at disadvantage in making
his defense.   For example in Bobb v. Wolff, 148 Mo.
335, l. c. 349, the court said of the plaintiff Bobb: "He

waits until Wolff is dead and his children are deprived of all the evidence on his side, and stands by and sees Wolff's estate finally settled without preferring his claim, and sees the real estate, including the land in suit, partitioned, and never once suggests that he has an equity of redemption in the land.'' In Rutter v. Carothers, 223 Mo. 631, there is a discussion of the doctrine of laches in which nothing is said contrary to what is above stated as the elements of laches, and it concludes as follows: ''The case at bar being barren of essential facts upon which to predicate the defense of staleness or laches, the point is ruled against the defendants.''

In 16 Cyc., pp. 162-163, the law is stated thus: ''The most frequent case of laches consisting of delay working prejudice to defendant through change in circumstances is where plaintiff has slept on his rights and permitted defendant to make valuable improvements on property in controversy, or to make large expenditures in reliance on his title thereto. . . . Where a suitor before proceeding permits such a lapse of time that the evidence has become obscured or lost, relief will be denied because of the difficulty of doing justice.''

In this case it is true the plaintiff has delayed long in bringing his suit, but he has brought it within the period allowed him by the statute. Mere delay, as the authorities quoted show, will not preclude the plaintiff on the ground of laches, there must be delay that has worked prejudice to the defendants.

What injury has the delay caused the defendants? No witness has died, no evidence has been lost. It is said that by the plaintiff's long delay, nearly ten years, these defendants were induced to believe that he had abandoned any claim he had to the land and so believing invested their money in its purchase. But that is a mistake in fact. They purchased within less than three years after the sheriff's sale and since their pur-

chase they have not spent a dollar in the improvement of the land; it was wild land when they purchased and it is wild land now. They have paid taxes on the land, but that the plaintiff offers in his petition to return to them, together with the amount paid by their grantor at the sheriff's sale. In their answer they show that they were not influenced in making the purchase by any conduct on the part of the plaintiff, for they expressly say that they relied on the record of the sheriff's deed to Stacey which was regular on its face.

Having examined the record they concluded to purchase from Stacey and paid him $800 for the land, which they say was its then full value. And in the transaction they were acting under the advice of a gentleman learned in the law, yet, paying full value, they took a quitclaim deed. They cannot therefore say that they acted unadvisedly and did not know the effect of a quitclaim deed. The deed they took put them in Stacey's shoes and charged them with knowing what he knew, and he knew that the sheriff in making the sale acted in violation of the law.

But they say that during the delay the land has increased in value, therefore the plaintiff is guilty of laches. If the increase in value had resulted from any improvement the defendants had put upon it, there might be some reason for asking a court of conscience to apply the doctrine of laches to the plaintiff's suit, although even that may be doubted since they bought with knowledge that the land was sold by the sheriff in violation of law, whereby 160 acres were sold in a body under an execution calling for only $9.87. But the increased value of the land was in no degree influenced by the expenditure of money or labor by the defendants. The answer of defendants itself shows that the increased value was caused by the building of a railroad near the land, and a system of drainage at the public expense.

It is true every man ought to pay his taxes to support the State government, and if he fails to do so he ought to suffer the penalty prescribed by law, and the purchaser at a tax sale, conducted according to law ought to have what the law gives him, but I do not see any reason for making him a special ward in chancery, or for a court of equity in such case to deny the land owner his legal remedy.

In my opinion the judgment ought to be reversed, and the cause remanded with directions to enter a decree in favor of the plaintiff cancelling the sheriff's deed. *Brown, J.,* concurs in these views.